**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

DAVID C. LONG,                                  )
                                                )
          Plaintiff,                    )
                                                )
          v.                            )      02:11cv0409
                                                )
MICHAEL J. ASTRUE,                              )
COMMISSIONER OF SOCIAL SECURITY,                )
                                                )
          Defendant.                    )

**MEMORANDUM OPINION AND ORDER OF COURT**

June 11, 2012

## I.       Introduction

Plaintiff, David C. Long, brought this action pursuant to 42 U.S.C. §§ 405(g) and
1383(c)(3), for judicial review of the final determination of the Commissioner of Social
Security ("Commissioner") which denied his application for disability insurance benefits
("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social
Security Act ("Act"), 42 U.S.C. §§ 401-433 and 1381-1383(f).

## II.       Background

### A.    <u>Facts</u>

Plaintiff was born on October 7, 1967, and was 42 years old at the time of the
decision of the Administrative Law Judge ("ALJ"). Plaintiff has completed the eighth grade
and has no further formal education. He has past relevant work experience as an assembler

and as an employee of a pizza shop where he primarily delivered pizzas, but also did some

food preparation and stocked supplies in the pizza shop. The vocational expert testified that

these past jobs were unskilled in nature and performed at a light exertional level. (R. 47).

Plaintiff alleges disability as of May 15, 2006, due to depressive disorder, spur in

his neck, various problems with his back, heart, liver, and stomach, hypoglycemia, and a

history of hiatal hernia. The record reflects that Plaintiff has not engaged in substantial gainful

work activity since May 15, 2006, his alleged onset date.

### B.    Procedural History

Plaintiff initially filed an application for SSI and DIB on August 6, 2008, in which he

claimed total disability since May 15, 2006. Plaintiff's applications were denied initially on

November 18, 2008. The Commissioner randomly selected this case to test modifications to the

disability determination process, eliminated the reconsideration phase of the administrative

review process, and forwarded this case to the hearing phase. Plaintiff subsequently filed a

written request for hearing on January 6, 2009. An administrative hearing was held on May 19,

2010 before Administrative Law Judge William E. Kenworthy ("ALJ"). Plaintiff was

represented by counsel and testified at the hearing. Alina Kurtanich, M.S., M.P.A., an impartial

vocational expert, also testified at the hearing.

On May 20, 2010, the ALJ rendered an unfavorable decision to Plaintiff in which he

found that while Plaintiff had severe impairments, there was insufficient evidence of an

impairment or combination of impairments which met or medically equaled the criteria of the

Act's listed mental impairments.[1] Furthermore, the ALJ found that Plaintiff retained the residual functioning capacity to perform a limited range of light exertional work, with restrictions[2] and, therefore, was not "disabled" within the meaning of the Act.

The ALJ's decision became the final decision of the Commissioner on February 10, 2011, when the Appeals Council denied Plaintiff's request to review the decision of the ALJ.

On March 30, 2011, Plaintiff filed his Complaint in this Court in which he seeks judicial review of the decision of the ALJ. The parties have filed cross-motions for summary judgment. Plaintiff argues that the decision of the ALJ is not supported by the factual and medical evidence of record, specifically, that the ALJ erred in: a) concluding that Plaintiff's impairments did not meet or equal the criteria of the mental health listings; b) assessing Plaintiff's residual functional capacity and credibility; and c) failing to accurately convey all of Plaintiff's impairments, and the resultant limitations, in his hypothetical question to the vocational expert. The Commissioner contends that the decision of the ALJ should be affirmed as it is supported by substantial evidence, and that the ALJ: a) correctly concluded that Plaintiff's impairments did not meet or equal the criteria of any listed impairment; b) appropriately assessed Plaintiff's residual functional capacity and credibility; and c) adequately reflected all of Plaintiff's limitations in his hypothetical question to the vocational expert. The

---

1       20 C.F.R. Pt. 404, subpt. P, app. I, §§ 12.00-12.10.
2       Specifically, the ALJ found that Plaintiff had the residual functional capacity to:
        "perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except limited to simple, repetitive
        tasks that do not require dealing with the general public or maintaining close interaction and cooperation with
        coworkers." ALJ Decision, Finding No. 5.

Court agrees with the Commissioner and will therefore grant the motion for summary judgment filed by the Commissioner and deny the motion for summary judgment filed by Plaintiff.

### III.     Legal Analysis

#### A.     Standard of Review

The Act limits judicial review of disability claims to the Commissioner's final decision. 42 U.S.C. §§ 405(g) and 1383(c)(3). If the Commissioner's finding is supported by substantial evidence, it is conclusive and must be affirmed by the Court. 42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). The Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389 (1971); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d. Cir. 1999). It consists of more than a scintilla of evidence, but less than a preponderance. *Thomas v. Commissioner of Social Security*, 625 F.3d 798 (3d Cir. 2010).

In situations where a claimant files concurrent applications for SSI and DIB, courts have consistently addressed the issue of a claimant's disability in terms of meeting a single disability standard under the Act. *See Burns v. Barnhart*, 312 F.3d 113, 119 n.1 (3d. Cir. 2002) ("This test [whether a person is disabled for purposes of qualifying for SSI] is the same as that for determining whether a person is disabled for purposes of receiving social security disability benefits [DIB]. *Compare* 20 C.F.R. § 416.920 *with* § 404.1520."); *Sullivan v. Zebley*, 493 U.S.

521, 525 n.3 (1990) (holding that regulations implementing the Title II [DBI] standard, and those implementing the Title XVI [SSI] standard are the same in all relevant aspects.); *Morales v. Apfel*, 225 F.3d 310, 315-16 (3d. Cir. 2000) (stating claimants burden of proving disability is the same for both DIB and SSI).

When resolving the issue of whether an adult claimant is or is not disabled, the Commissioner utilizes a five-step sequential evaluation. 20 C.F.R. §§ 404.1520 and 416.920 (2012). This process requires the Commissioner to consider, in sequence, whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his or her past relevant work, and (5) if not, whether he or she can perform other work. *See* 42 U.S.C . § 404.1520; *Newell v. Commissioner of Social Security*, 347 F.3d 541, 545-46 (3d Cir. 2003) (*quoting Burnett v. Commissioner of Social Security*, 220 F.3d 112, 118-19 (3d Cir. 2000)).

To qualify for disability benefits under the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Fargnoli v. Halter,* 247 F.2d 34, 38-39 (3d Cir. 2001) (internal citation omitted); 42 U.S.C. § 423 (d)(1) (1982). This may be done in two ways:

> (1)  by introducing medical evidence that the claimant is disabled *per se* because he or she suffers from one or more of a number of serious impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1. *See Heckler v. Campbell*, 461 U.S. 458 (1983); *Newell,* 347 F.3d at 545-46; *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004); or,

(2)    in the event that claimant suffers from a less severe impairment, by demonstrating that he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ."  *Campbell,* 461 U.S. at 461 (citing 42 U.S.C. § 423 (d)(2)(A)).

Where a claimant has multiple impairments which may not individually reach the level of severity necessary to qualify under any impairment for listed impairment status, the Commissioner nevertheless must consider all of the impairments in combination to determine whether, collectively, they meet or equal the severity of a listed impairment.  *Diaz v. Commissioner of Social Security*, 577 F.2d 500, 502 (3d Cir. 2010); 42 U.S.C. § 423(d)(2)(C) ("in determining an individual's eligibility for benefits, the Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity.")

Alternatively, in order to prove disability under the second method, a claimant must first demonstrate the existence of a medically determinable disability that precludes claimant from returning to his or her former job.  *Newell,* 347 F.3d at 545-46; *Jones,* 364 F.3d at 503. Once it is shown that claimant is unable to resume his or her previous employment, the burden shifts to the Commissioner to prove that, given claimant's residual functional capacity[3], mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy.  *Rutherford*, 399 F.3d at

---

3    Residual Functioning Capacity is "what a [claimant] can still do despite his limitations." *Ramirez v. Barnhart*, 372 F.3d 546, 551 n.1 (3d Cir. 2004) (*citing* 20. C.F.R. § 416.945(a)).

551; *Newell,* 347 F.3d at 546; *Jones*, 364 F.3d at 503; *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002).

In this case, the ALJ determined that Plaintiff was not disabled within the meaning of the Act at the third and fifth step of the sequential evaluation process. In making his determination regarding the third step of the evaluation process, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. I. (ALJ Decision, Finding No. 4.) Regarding the fifth step of the evaluation process, after careful consideration of the entire record and the testimony of the vocational expert, the ALJ concluded that Plaintiff had the residual functioning capacity to perform light work, limited to simple, repetitive tasks that do not require dealing with the general public or maintaining close interaction and cooperation with coworkers. (ALJ Decision, Finding No. 5.)

## B.    Discussion

As set forth in the Act and applicable case law, this Court may not undertake a de novo review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190 (3rd Cir. 1986), *cert. denied.*, 482 U.S. 905 (1987). The Court must simply review the findings and conclusions of the ALJ to determine whether they are supported by substantial evidence. 42 U.S.C. § 405(g); *Schaudeck v. Comm'n of Soc. Sec. Admin.,* 181 F.3d 429, 431 (3d Cir. 1999).

Plaintiff argues that the ALJ erred when he (a) concluded that Plaintiff's condition does not meet or equal listing 12.04, 12.06 or any one of the Mental Health listings; (b) relied on Plaintiff's sporadic activities of daily living in assessing Plaintiff's functional capacity and credibility; and (c) failed to accurately convey all of Plaintiff's impairments, and limitations they caused, in the hypothetical question to the Vocational Expert. Plaintiff's arguments will be addressed seriatim.

1. *The ALJ properly determined that Plaintiff's impairment did not meet or equal the criteria of 12.04, 12.06 or any one of the mental health listings.*

Plaintiff contends that the ALJ's decision that his impairment did not meet or equal the criteria under 20 C.F.R. pt. 404, subpt. P, app. I, §§ 12.04, 12.06 or any one of the mental health listings is not supported by the substantial evidence of record.

The third step of the disability determination process allows the claimant to establish through medical evidence that his impairment, or combination of impairments, meets or medically equals the criteria of a listed impairment. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 404.1520(d) (2012). The United States Supreme Court explained the prerequisites of this "equality" step: "[f]or a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original.) Furthermore, "[a]n impairment that manifests only some of those criteria, no matter

how severely, does not qualify." *Id*. The strict nature of medical criteria required[4] for a claimant to meet or equal a listed impairment reflects the decisiveness such a finding has in the claimant's case.[5] *Id*. at 532-33. Accordingly, the criteria's severity is designed to "exclude claimants who have listed impairments in a form severe enough to preclude *substantial* gainful activity, but not quite severe enough to meet the listings level-that which would preclude *any* gainful activity." *Id*. at 534 (emphasis in original).

When evaluating an individual's mental impairments, the Court is required to use a specific technique that is a "highly individualized process" which considers many issues and all of the relevant evidence to determine an individual's level of functional limitation. 20 C.F.R. § 404.1520a(a)-(c)(1). Evaluation of an individual's level of functional limitation is structured through consideration of the following four categories: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *Id*. at § 404.1520a(c)(3). The categories are graded on a point scale,[6] with the last point marking a degree of limitation that is incompatible with the ability to do any gainful activity. This technique, and the categories employed, is identical to the paragraph B criteria used to

---

4       "We will find that you have a listed impairment if the diagnostic description in the introductory paragraph *and* the criteria of both paragraphs A and B (or A and C, when appropriate) of the listed impairment are satisfied." 20 C.F.R. pt. 404, subpt. P, app. I, § 12.00 [A] (emphasis added).

5       "The reason for this difference between the listings' level of severity and the statutory standard is that, for adults, the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990).

6       Categories (1)-(3) are measured on a five-point scale: none, mild, moderate, marked, and extreme. Category (4) is measured on a four-point scale: none, one or two, three, four or more. On each scale, the last point represents a degree of limitation that is incompatible with the ability to do any gainful activity. 20 C.F.R. §§ 404.1520a(c)(4).

determine if an individual satisfies the requirements of the various listed mental health impairments.[7]

Under § 12.04, an individual has a listed impairment and is considered disabled at Step 3 of the sequential evaluation process if the individual has a "[m]edically documented persistence" of depressive syndrome, manic syndrome, or bipolar syndrome that meets the criteria in both paragraphs A and B, or meets the criteria of paragraph C, of § 12.04. 20 C.F.R. pt. 404, subpt. P, app. I, § 12.04.

Section 12.04 [A] provides that an individual first must have a medically documented persistence of a psychological disorder.[8] Under § 12.04 [B], an individual has a severe listed impairment if he or she exhibits at least two of the following limitations:

1. Marked[9] restriction of activities of daily living;[10] or
2. Marked difficulties in maintaining social functioning;[11] or
3. Marked difficulties in maintaining concentration, persistence, or pace;[12] or
4. Repeated episodes of decompensation, each of extended duration.[13]

---

7    *Compare* 20 C.F.R. §§ 404.1520a(c)(1)-(4) with 20 C.F.R. pt. 404, subpt. P, app. I, §§ 12.00-12.10.

8    The ALJ determined that Plaintiff had a severe impairment of depression, not otherwise specified. (ALJ Decision, Finding No. 3.)

9 `    For measuring the degree of a limitation, "marked" means more than moderate, but less than severe. A marked limitation may arise when several or even one activity of function is impaired, as long as the degree of limitation seriously interferes with an individual's ability to function "independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. pt. 404, subpt. P, app I, § 12.00 [C].

10    "Activities of daily living" are activities such as "cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office." 20 C.F.R. pt. 404, subpt. P, app.I, § 12.00 [C][1].

11    "Social functioning refers to your capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals." 20 C.F.R. pt. 404, subpt. P, app. I, § 12.00[C][2].

12    "Concentration, persistence or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. pt. 404, subpt. P, app. I, § 12.00[C][3].

Under § 12.04 [C], an individual has a severe impairment if he or she has a "[m]edically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation in ability to do basic work activities…", in conjunction with one of the following:

1. Repeated episodes of decompensation, each of extended duration; or
2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

The ALJ focused his analysis on § 12.04 [A] in determining whether Plaintiff's mental impairment satisfied any of the paragraph B criteria shown above.[14] The ALJ found that:

In activities of daily living, the claimant has mild restriction. The claimant testified that he lives independently and generally pays his own bills with money orders. He drives a car around town to get his groceries and for other purposes. However, he does receive assistance from a case manager supplied by the welfare department. Dr. Detore noted that the claimant appeared to neglect his personal hygiene.

In social functioning, the claimant has moderate difficulties. The claimant is divorced. There is no record of any altercations or difficulty getting along with anyone. He is able to deal with others such as store clerks in casual contact.

With regard to concentration, persistence, or pace, the claimant has moderate difficulties. Mr. Long alleged in his testimony that he has difficulty in concentrating,

---

13    Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." The term "repeated episodes of decompensation, each of extended duration" means "three episodes within 1 year, or an average of once every 4 months, each lasting at least 2 weeks." 20 C.F.R. pt. 404, subpt. P, app. I, § 12.00[C][4].

14    The requirements of §12.04[B], as shown above, are the same as the paragraph B criteria for the following: §§ 12.02, 12.03, 12.06, 12.07, 12.08, and 12.10. *See* 20 C.F.R. pt. 404, subpt. P, app. I, §§ 12.02-12.04, 12.06-12.08, and 12.10.

although he can watch television. He admitted that he engages in building and flying model airplanes as a hobby. This activity requires at least a moderate degree of persistence and concentration.

As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration. There is no record of any episode of decompensation whatsoever.

Because the claimant's mental impairment does not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.

I have also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria.

(R. 13-14).

The evidence of record reveals that Plaintiff is able to independently maintain his daily needs such as getting around, bathing, dressing and feeding himself and although he may at times experience some difficulty, he does not require assistance at home to accomplish these tasks. (R. at 42, 254, 305, 311, 319, 472, 497, 717, 733, 766, 791, 935, 936, 960, 973-75). The record demonstrates that Plaintiff's grooming and hygiene habits are erratic, and his general appearance is described as "disheveled" to "fair" to "well groomed." (R. at 264, 311, 435, 439, 484, 923, 936, 967, 974, 978). Plaintiff testified that he lives on his own, goes grocery shopping, pays his own bills, keeps track of his expenses, manages his medications, "tries" to clean and organize his house, and drives himself to the store and his various appointments. (R. at 28, 30, 31, 33, 40, 41). Furthermore, with some help from his sister, Plaintiff is able to take care of his yard which, when compared to his neighbor's lawn, was described as "not too bad." (R. at 42, 43).

Furthermore, several doctors who evaluated Plaintiff's mental status commented directly on Plaintiff's restrictions regarding activities of daily living. As the ALJ noted, Dr. Detore reported that Plaintiff neglected his hygiene somewhat, but she also stated that his personal appearance was fair. (R. at 936). Grant W. Croyle, Ph.D., reported Plaintiff's degree of limitation with activities of daily living as "moderate" and stated Plaintiff was "self-sufficient." (R. at 948, 960). Arlene Rattan, Ph.D., rated Plaintiff's limitation with activities of daily living as "none." (R. at 472).

The Court finds that while the evidence of record demonstrates that Plaintiff may be somewhat limited in his daily living activities, he can perform daily activities without undue interruption and without direct supervision. Therefore, the Court finds that there is substantial evidence of record to support the ALJ's finding that Plaintiff does not have a marked restriction in his activities of daily living.

The Plaintiff next contends that "he has difficulty being around people and often has difficulty with his memory and concentration." (Pl.'s Br. at 11). The ALJ determined that, with regard to social functioning, Plaintiff had only "moderate difficulties." (R. at 14). Plaintiff is divorced, and the record reflects that Plaintiff became very depressed after his wife left him in early 2002. (R. at 242, 244, 252, 256, 264, 265, 343 404, 406, 409, 414, 417, 434, 436, 441, 444, 483, 920, 934). From March 2002 to September 2002, Plaintiff was admitted twice for depression related to his relationship problems. (R. at 221-242, 402-444). By early 2005, Plaintiff was in a "good relationship" with a new girlfriend, they got engaged, and the relationship lasted until 2010. (R. at

484, 485, 934, 935, 1068, 1079). In spring of 2010, Plaintiff stated that he was "stressed out" and "feeling overwhelmed by the responsibilities of caring for [his] girlfriend." (R. at 519, 525, 1079). However, after Plaintiff and his girlfriend split, Plaintiff identified that his ex-girlfriend "caused him a lot of stress" and since the breakup, things are "working out better." (R. at 1079). The record demonstrates that Plaintiff has no history of altercations, interacts well with others, and is normally alert and cooperative. (R. at 246, 249, 265, 272, 319, 334, 343, 439, 935, 974, 978, 986).

Moreover, Dr. Rattan evaluated Plaintiff and determined that he had "mild" difficulties in maintaining social functioning, was "not significantly limited" in his social interaction abilities, and that Plaintiff had "no restrictions in his abilities in regards to social interaction and adaptation." (R. at 460, 461, 472). Dr. Croyle found Plaintiff had "moderate" difficulties in maintaining social functioning, and stated that Plaintiff is "[a]ble to maintain socially appropriate behavior." (R. at 947, 948). Dr. Croyle also concluded, as did Dr. Detore, that Plaintiff was "moderately limited" in his social interaction abilities. (R. at 947, 960). Accordingly, the Court finds that there is substantial evidence of record to support the ALJ's finding that Plaintiff has "moderate difficulties" in maintaining social functioning. (R. at 14).

With regard to Plaintiff's alleged difficulty with memory and concentration, the ALJ again determined that Plaintiff only had "moderate difficulties." (R. at 14). While limitations in concentration, persistence or pace are "best observed in work settings," they may also be reflected through limitations in other settings, assessed through clinical examinations of psychological testing, and supplemented by other available evidence wherever possible. 20 C.F.R. pt. 404, subpt.

P, app. I, § 12.00[C][3]. A marked limitation is not defined by "a specific number of tasks you are able to complete, but by the nature and overall degree of interference with function." *Id*.

The evidence of record demonstrates that Plaintiff has experienced problems with his memory for quite some time. In March 2002, Plaintiff was diagnosed with mild mental retardation and a decreased concentration and attention span. (R. at 223, 230, 237). In September 2002, Plaintiff stated that his pain interfered with his ability to concentrate and/or learn; however, also in September 2002, Dr. Oscar Urrea noted that Plaintiff's "memory was normal" and his mental condition was "alert" (R. at 406, 439, 440). These findings were also reflected in Dr. Gowri Arul's report of December 3, 2002, where he stated that Plaintiff's "memory function" was "intact." (R. at 265). In January 2003, a therapist at Westmoreland Regional Hospital noted Plaintiff's "memory is better" than it was three months prior, however, "poor concentration" was identified as one of Plaintiff's psychiatric symptoms. (R. at 252, 262). During a Psychiatric Evaluation with Dr. Hai Wei Wang on September 28, 2007, Plaintiff said he "had trouble with memory," and although "he can learn things very quickly" noted that "for some reason he cannot retain the information." (R. at 484). Dr. Wang concluded that Plaintiff's "cognitive function was impaired in memory." (R. at 484).

Plaintiff's difficulties with concentration, persistence and pace were discussed at length in his assessments conducted by Drs. Rattan, Detore and Croyle. In his March 15, 2007 assessment, Dr. Rattan noted that "Understanding and Memory" was not significantly limited to moderately limited; "Sustained Concentration and Persistence" was not significantly limited to moderately limited; Plaintiff's "Difficulties in Maintaining Concentration, Persistence, or Pace" was

moderate; and that Plaintiff can "make simple decisions" and "is able to carry out very short and simple instructions." (R. at 459, 460, 461, 472).

Dr. Detore concluded in his November 17, 2008, that Plaintiff "does suffer from a learning disorder and most likely has had some cognitive dysfunction." (R. at 933). Dr. Detore described Plaintiff's memory as "clearly vague and spotty for detail" regarding his past, however, Dr. Detore noted that Plaintiff tested well on several concentration tests such as serial 7s, and his abstract thinking abilities were intact. (R. at 936). Overall, Dr. Detore determined that Plaintiff's impairment imposed moderate limitations on his ability to understand, remember, and carry out instructions; and that Plaintiff had moderate limitations on his ability to respond appropriately to supervision, co-workers, and work pressures in a work setting. (R. at 938).

Dr. Croyle opined in his November 18, 2008, assessment that Plaintiff's "Understanding and Memory" was not significantly limited to moderately limited; "Sustained Concentration and Persistence" was moderately limited to not significantly limited; "Difficulties in maintaining concentration, persistence, or pace" were moderate; that Plaintiff could "carry out very short work and simple instructions" and that he retained the ability "to meet the basic mental demands of competitive work on a sustained basis despite the limitation resulting from his impairment." (R. at 946, 947, 948, 960).

Furthermore, a January 16, 2009, SPHS Behavioral Health Adult Assessment and Psychological History report reflects that Plaintiff acknowledged a moderate to severe problem with

poor concentration, but denied having any problems with poor memory both currently and in the past. (R. at 966).

The Court finds that while the evidence of record demonstrates that Plaintiff may be somewhat limited in his ability to maintain concentration, persistence, or pace, the evidence of record also demonstrates that Plaintiff's moderate limitations do not reach the level of "marked difficulty." Therefore, the Court finds that there is substantial evidence of record to support the ALJ's finding that Plaintiff does not have a marked restriction in his ability to maintain concentration, persistence, or pace.

With regard to repeated episodes of decompensation, each of extended duration, Plaintiff contends that "the medical records indicate several in-patient psychiatric admissions due to depression and suicidal ideation, as well as a history of mental health treatment." (Pl.'s Br. at 10). However, the ALJ determined that Plaintiff "has experienced no episodes of decompensation, which have been of extended duration." (R. at 14.) The temporal requirements dictate that Plaintiff must have at least three (3) episodes of decompensation within one (1) year, or average an episode of decompensation once every four (4) month with each episodes lasting at least two (2) weeks. 20 C.F.R. pt. 404, subpt. P, app. I, § 12.00[C][4]. The requirements state that the ALJ will use judgment to determine whether "more frequent episodes of shorter duration or less frequent episodes of longer duration" are equally as severe, and thus "may be used to substitute for the listed finding in a determination of equivalence." *Id*. Furthermore, "episodes of decompensation may be inferred from medical records showing *significant* alteration in medication; or documentation of the

need for a more structured psychological support system; or other relevant information in the record about the existence, severity, and duration of the episode." *Id*. (*emphasis added*).

The record demonstrates that in 2002, Plaintiff was in fact hospitalized twice for treatment of depression and suicidal ideation. (R. at 221-242, 403-407). In April of 2008, Plaintiff was again hospitalized for psychiatric problems which stemmed from relationship problems and was discharged the same day. (R. at 496-501, 1068).

Plaintiff's history of mental treatment coincides with his earlier hospitalization. Plaintiff received counseling from September 2002 until about April 2003, when his case file was closed because Plaintiff did not make any other appointments. (R. at 244-268). For a few years thereafter, the record reflects that Plaintiff's symptoms were "less intense and less frequent with occasional flare-ups" and that he did not have any follow-up treatments with a psychiatrist or his family doctor. (R. at 924). According to the evidence of record, Plaintiff did not receive counseling again until 2007, when he "started experiencing depression again." Plaintiff was discharged from the treatment program in November 2008 because he attended only one out of four sessions. (R. at 482-487, 963). Plaintiff went to the SPHS Behavioral Center on January 16, 2009 to seek treatment and upon evaluation it was recommended that Plaintiff try taking medication as a form of treatment. (R. at 965-975). Since January of 2010, Plaintiff has been treated by Dr. Howland, has accepted medication as a form of treatment, reported benefits of the medication, and has been stable. (R. at 1034-1084). Assessments completed by Drs. Rattan and Croyle also note that Plaintiff has experienced no repeated episodes of decompensation, each of extended duration. (R. at 472, 960).

The record demonstrates that Plaintiff's brief and isolated hospitalizations for psychiatric reasons and his sporadic attendance at mental health treatment sessions does not meet the listing's temporal requirements of decompensation. Furthermore, the record does not show a *significant* alteration in medication or structured psychological support systems that would prove the existence, severity, and duration of any such episode. Therefore, the Court finds that there is substantial evidence of record to support the ALJ's finding that Plaintiff has experienced no episodes of decompensation, which have been of extended duration.

Accordingly, the Court finds that the record supports the finding of the ALJ that Plaintiff does not meet the "B" criteria for §§ 12.02-12.04, 12.06-12.08, and 12.10. Furthermore, Plaintiff does not meet the criteria for § 12.05, because the record does not contain evidence relating to an IQ score; and the above analysis of the "B" criteria shows that Plaintiff is not dependent upon others for personal needs and that he is able to follow directions. Lastly, Plaintiff does not meet the criteria for § 12.09, because the record is replete with evidence which demonstrates that Plaintiff does not have any drug or alcohol addiction disorders, and in fact he does not use drugs or alcohol at all. (R. at 225, 228, 253, 272, 274, 305, 343, 354, 358, 414, 497, 499, 503, 512, 515, 518, 525, 543, 556, 565, 574, 576, 589, 591, 593, 922, 934, 965, 978, 987, 992, 1035, 1067).

Regarding the "C" criteria, the Court finds that there is no evidence of record that Plaintiff has a history of being unable to function outside of a highly supportive living arrangement; that an increase in mental demands or change of environment would be predicted to cause Plaintiff to decompensate; or that Plaintiff has suffered repeated episodes of decompensation, each of

extended duration. Furthermore, the assessments completed by Drs. Rattan and Croyle both indicate that the "[e]vidence does not establish the presence of the "C" criteria." (R. at 473, 961). Therefore, there is sufficient evidence of record to support the ALJ's finding that Plaintiff's mental impairment does not meet the criteria of paragraphs "B" and "C" of §12.04, §12.06 or any of the listed mental impairments.

      2.    *The ALJ appropriately assessed Plaintiff's Credibility and Residual Functioning Capacity (RFC).*

Plaintiff next argues that the ALJ incorrectly relied upon evidence which relates to Plaintiff's activities of daily living in assessing Plaintiff's functional capacity and credibility. In assessing a plaintiff's residual functioning capacity, consideration must be given to subjective allegations. 20 C.F.R. 404.1529; 20 C.F.R. 416.929. Plaintiff testified that he is unable to work because he wears out too easily, often experiences pain "all over," and more specifically has "a lot of back pain" and chest pains. (R. at 28). The ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects" of his symptoms were not credible and were not consistent with the medical evidence.

An ALJ must give great weight to a claimant's subjective description of inability to perform even light or sedentary work when such testimony is supported by competent evidence. *Schaudeck v. Commissioner of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir. 1999) (*relying on Dobrowolsky*). When a medical impairment that could reasonably cause the alleged symptoms exists, the ALJ must evaluate the intensity and persistence of the symptom, and the extent to which it affects the individual's ability to work. This evaluation obviously requires the ALJ to determine

the extent to which a claimant is accurately stating the degree of symptom or the extent to which he or she is disabled by it. *See* 20 C.F.R. § 404.1529(c) (2002); *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).

Credibility determinations by an ALJ need only be supported by substantial evidence on the record as a whole. *Miller v. Commissioner of Soc. Sec.*, 172 F.3d 303, 304 n.1 (3d Cir. 1999). The United States Court of Appeals for the Third Circuit has stated:

> [I]n all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations. The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work.

*Schaudeck*, 181 F.3d at 433, *quoting* Social Security Ruling ("SSR") 95-5p.

The ALJ considered the medical evidence of record and determined that Plaintiff's allegations were not credible. In March 2007, Dr. Arlene Rattan found that Plaintiff was able to make simple decisions, carry out very short and simple instructions, and had no restrictions in his social interaction or adaptation abilities. (R. at 461). Dr. Ratten also noted that "[b]ased on the evidence of record, the claimant's statements are found to be partially credible." (R. at 461).

The ALJ considered the evidence of record and noted that there are no objective findings to support Plaintiff's allegations of severe pain and that Plaintiff has never been referred to a pain clinic. (R. at 15). Furthermore, Plaintiff testified that he "usually doesn't bother" taking any prescribed medication for pain, and that he "sometimes" uses Tylenol when his back or neck hurts. (R. at 28).

Also in March of 2007, Martha McMichael, DDS, noted that, based on the evidence, Plaintiff's daily activities are not significantly limited despite the severity of the symptoms alleged. Furthermore, Dr. McMichael stated that "[d]espite the allegations of persistent symptoms, he [Plaintiff] has not been prescribed medication for those symptoms." (R. at 481).

In October 2008, Lauren Palm, DDS, evaluated Plaintiff and prepared a Physical Residual Functional Capacity Assessment report. Dr. Palm found that Plaintiff's alleged symptoms and their effects did not significantly limit his described daily activities. Dr. Palm also found Plaintiff's statements to be partially credible, and determined that "[h]e does not require an assistive device to ambulate." (R. at 932).

In November 2008, Dr. Croyle conducted an Assessment of Plaintiff's Mental Residual Functioning Capacity and found that Plaintiff could "sustain an ordinary routine without special supervision" and that "[r]eview of the medical evidence reveals that the claimant retains the abilities to manage the mental demands of many types of jobs not requiring complicated tasks." (R. at 948). Furthermore, Dr. Croyle found that Plaintiff's statements were only partially credible. (R. at 948).

The evidence of record also indicates that Plaintiff can perform daily activities without undue interruption and without direct supervision. Specifically, Plaintiff cleans his own house, pays his own bills, keeps track of his expenses, mows his own lawn, regularly drives himself to get groceries and other household items, and builds and flies model airplanes. (R. at 28, 29, 30, 31, 33, 40, 41).

Plaintiff contends that the ALJ failed to fully address the fact that he receives assistance from a case manager supplied by the welfare department and that Dr. Detore noted Plaintiff has difficulty with personal care, hygiene, and social activities. However, other than Plaintiff's statement at the hearing that he had a case manager, the record is void of any reference to Plaintiff being assisted by a case worker or that Plaintiff needed the services of a case worker. Furthermore, as explained above, the medical evidence of record as a whole supports a finding that Plaintiff is mildly restricted in his activities of daily living.

The Court, therefore, concludes that since matters of credibility are within the province of the factfinder, the ALJ properly considered Plaintiff's daily activities and determined that Plaintiff's statements and testimony were not entirely credible. The Court finds that substantial evidence exists in the record which supports the ALJ's finding that Plaintiff has the residual functioning capacity to perform light work, limited to simple repetitive tasks that do not require dealing with the general public or maintaining close interaction and cooperation with coworkers.

3. *The ALJ accurately portrayed all of Plaintiff's impairments, and the limitations they caused, in the hypothetical question to the Vocational Expert.*

In order to determine whether a plaintiff is capable of performing substantial gainful activity that exists in significant numbers in the national economy, the ALJ may rely upon the testimony of a vocational expert ("VE"). Testimony of a VE constitutes substantial evidence for the purposes of judicial review when a hypothetical question encompasses all of a plaintiff's impairments which are supported by the medical record. *Ramirez v. Barnhart*, 372 F.3d 546 (3d Cir.

2004); *Burns v. Barnhart*, 312 F.3d 113, 120 (3d Cir. 2002); *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987). Hypothetical questions need only include factors that are supported by objective medical evidence contained in the record. *Chrupcala*, 829 F.3d at 1271. It is not necessary for the ALJ to include facts in the hypothetical question that are supported <u>only</u> by a plaintiff's subjective testimony. *Id*.

The ALJ posed the following hypothetical to the VE at the administrative hearing in this matter:

> Q: Okay. If we assume an individual capable of performing work at the light exertional level, limited to tasks of a simple and repetitive nature, that would not require dealing with the general public or maintaining close interaction and cooperation with coworkers, are there jobs that can be performed?
>
> A: Yes, your honor, there are. This type of individual could perform a position as a marker with a SVP of 2, unskilled position, light exertional level, over 200,000 positions. Also as a garment sorter with an SVP of 2, unskilled, light exertional level, over 280,000 positions. And as an electronic worker with an SVP of 2 – electronic worker, SVP 2, unskilled, light exertional level.
>
> Q: Is that testimony consistent with the Dictionary of Occupational Titles?
>
> A: It is, your honor.

Plaintiff argues that "the ALJ failed to include all of Plaintiff's limitations with regard to his mental limitations, including his cognitive disorder, personality disorder, and schizoid disorder." (Pl's Br. at 12.)

A hypothetical question need only include the factors that are supported by the objective medical evidence contained in the record. *Plummer v. Apfel*, 186 F.3d 422, 421 (3d Cir. 1999). The Court has already found and ruled that substantial evidence supports the ALJ's decision

regarding Plaintiff's limitations in the areas of activities of daily living, social functioning and concentration, persistence, and pace. The record reflects that the hypothetical question posed by the ALJ accurately represented Plaintiff's age, background, and residual functional capacity based on the objective medical evidence. Accordingly, the Court finds that the ALJ did not err in failing to include the limitations alleged by Plaintiff in the hypothetical posed to the VE.

**IV.        Conclusion**

It is undeniable that Plaintiff has a number of impairments, and this Court is sympathetic and aware of the challenges which Plaintiff faces in seeking gainful employment. Under the applicable standards of review and the current state of the record, however, the Court must defer to the reasonable findings of the ALJ and his conclusion that Plaintiff is not disabled within the meaning of the Social Security Act, and that he is able to perform a wide range of light work, limited to simple, repetitive tasks that do not require dealing with the general public or maintaining close interaction and cooperation with coworkers.

For these reasons, the Court will grant the Motion for Summary Judgment filed by the Commissioner and deny the Motion for Summary Judgment filed by Plaintiff.

An appropriate Order follows.


McVerry, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

DAVID C. LONG,               )
                             )
      Plaintiff,          )
                             )
      v.              )      02:11cv0409
                             )
MICHAEL J. ASTRUE,         )
Commissioner of Social Security,   )
                             )
      Defendant.      )

## ORDER OF COURT

**AND NOW**, this 11th day of June, 2012, in accordance with the foregoing

Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED, AND DECREED** that:

      1.      The Motion for Summary Judgment filed by Plaintiff, David C. Long

(Document No. 11) is **DENIED**;

      2.      The Motion for Summary Judgment filed by Defendant, Michael J. Astrue,

Commissioner of Social Security (Document No. 16) is **GRANTED**; and

      3.      The Clerk of Court is to docket this case closed forthwith.

                      BY THE COURT:
                      <u>s/Terrence F. McVerry</u>
                      United States District Court Judge

cc:      Jessica L. Rafferty, Esquire
          Email: jlr@qrlegal.com

          Christy Wiegand, Esquire
          Assistant U.S. Attorney
          Email: christy.wiegand@usdoj.gov